

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 26  A 8: 37

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODERICK HALL                                  CIVIL ACTION

VERSUS                                         NUMBER: 03-2550

RICHARD L. STALDER, ET AL.                     SECTION: "R"(5)

## REPORT AND RECOMMENDATION

Roderick Hall, hereinafter referred to as plaintiff, has instituted suit on the standard form utilized by inmates for voicing complaints pursuant to 42 U.S.C. §1983. He initially named as defendants, Richard Stalder, Secretary of the Department of Public Safety and Corrections, James Miller, Warden of the Washington Correctional Institute, hereinafter referred to as "W.C.I.", Rick Warren, Rodney Hillman, Billy Hill, Ralph Burch and Ronnie Spears, all corrections officers at W.C.I. (Rec. doc. 1). Trial by jury has been sought herein. (Id.).

Defendants Stalder and Miller previously filed motions to dismiss in this matter which were granted by the Court. (Rec. docs. 13, 23, 26). As to the remaining defendants, a Spears hearing went

forward on November 30, 2004 at which numerous individuals testified. (Rec. doc. 43).

Plaintiff complains of an incident which occurred on September 24, 2002 during his incarceration at W.C.I. On that date, it was alleged by corrections officers that plaintiff spit upon Officer Billy Hill. Plaintiff alleged to the Court that this was not the case, although it is clear that plaintiff subsequently pled guilty to the administrative charge of battery on an officer, i.e., spitting upon Officer Hill.

Following the initial incident, plaintiff alleges that Officers Hill, Hillman and Spears utilized excessive force against him in retaliation for the spitting incident. Specifically, plaintiff alleges that Lt. Hillman removed him from the shower area of his dorm and told him to put out his arms to be handcuffed. Plaintiff complied but then relates that Hillman attempted to push him into a nearby pipe chase. When he resisted, plaintiff alleged that Lt. Hillman, Officer Hill and Sgt. Spears punched and kicked him until he fell to the ground. One of the officers then pulled him up at which time plaintiff told Hillman he wanted to fight him. This resulted in Hillman utilizing mace on plaintiff's face and the back of his neck.

Thereafter, plaintiff alleges that Hillman removed the handcuffs from plaintiff's wrists, at which time plaintiff ran from the shower area onto the tier. According to plaintiff, Hillman

2

then caught up with him and began to choke him and kick him in the groin area. It is unclear whether plaintiff is alleging that Hill and Spears also struck him after he left the shower area of the dorm.

Plaintiff testified that he suffered a knot on the back of his head, scrapes on his back, aches and pains from having been kicked and problems breathing on the evening of the incident. His injuries resolved within one week of the incident described.

As the Court understands it, defendants Burch and Warren were named as parties herein because they were present while this alleged force was being exercised against plaintiff and did nothing to stop same. Therefore, if plaintiff cannot sustain a claim for excessive use of force by Hill, Hillman and Spears, there is no sustainable claim against Burch and Warren because there will be no causal connection between their inaction and any injury which plaintiff has suffered.  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981).

At the Spears hearing held before the undersigned, plaintiff called various witness who were inmates on the tier whereon he resided when the incident occurred.  While most of the witnesses could verify that an altercation of some type occurred, they did not give probative information concerning the amount of resistance which plaintiff was offering toward the officers during the incident.  Furthermore, all of plaintiff's witnesses were located

3

in cells on the tier and did not witness what occurred in the shower area.

Several of plaintiff's witnesses, for example, Nathan Webster, Brandon Deflanders and Taurus Gregory, confirmed that an altercation took place but could not identify the officers involved.  Damion Williams could not see into plaintiff's cell but merely heard rumblings coming therefrom.

Edward Bradley remembers Sgt. Hill as being one of the officers who struck plaintiff.  Bradley testified that plaintiff had run down the tier and that the officers caught him, struck him and then put plaintiff back in his cell. He could not verify the names of anyone else involved.  Christopher Hodge testified that Sgt. Hill stated that he "had to let plaintiff know who was in charge" because plaintiff had spit on him.  Hodge further testified that Spears, Hillman and Hill struck plaintiff after he had returned to his cell.

For their part, the defendants deny that excessive force was utilized against plaintiff.

A review of plaintiff's medical records indicates that on September 19, 2002, several days before the incident at issue, plaintiff underwent a "use of force examination".  At that time, he alleged that he had been sprayed with a chemical agent.  He also complained that someone had hit him on the right side of his face when the chemical agent was used.  No redness, swelling or bruising

4

was noted to his head or neck area.  It was observed that plaintiff had existing scars to his face already.

On September 23, 2002, plaintiff was referred to the doctor in connection with his allegations of abuse by Lt. Hillman on September 19, 2002 when Hillman was stated to have used a chemical agent on plaintiff.  Plaintiff admitted that he had no swelling to his face but still insisted that he was experiencing pain. Plaintiff further alleged that Hillman had struck him in the face with his fist.  It was noted that plaintiff had no swelling and no problem moving his jaw at the time.  Hall admitted to having no problems eating or chewing food and no bruising was noted.  Nor were there any signs of fading bruises.  No treatment was felt to be needed but plaintiff was referred to Dr. Tran for further consultation.

On September 24, 2002, in the morning of the day of the incident at issue in this litigation, plaintiff lodged a request for medical treatment, claiming that security "beat him up".  A small abrasion on the left side of his head and a scratch on the right side of his back were noted.  The inmate claimed that three knuckles on his right hand were hurting him.  A knot behind his left ear was noted.  Plaintiff was referred to doctor's call and the abrasions and scratches were cleaned with peroxide.

A sick call sheet dated September 24, 2002 reveals that plaintiff alleged he was beaten by security to the right side of

5

his face five days earlier. However, plaintiff admitted to having no pain at the time of his examination. No swelling or bruising was noted and plaintiff had no difficulty chewing. Plaintiff was found to be in no distress and it was noted that there was no visible sign of his injury. An old scar on the right side of his face was noted.

On September 25, 2002 plaintiff filed a request for medical treatment and was seen by jail personnel. He complained of being beaten by security the prior evening, September 24, 2002. At that time he complained of cuts and knots on his head and of a problem with both arms. Hall additionally complained of a cut on his back.

Hall was stripped down to his underwear by medical personnel and examined with no signs of his being beaten noted. He had a small, old, scabbed-over scratch on his back and a small knot behind his left ear. There was no bruising and no redness noted. Nor were there any knots on his head or arms.

A sick call sheet generated on September 25, 2002 reveals that plaintiff complained of abuse by security the prior day. At that time, plaintiff advised that he suffered with pain in his head, arms and back. He was noted to be in no distress. A small area of broken skin was noted, without swelling or bruising. A scratch was noted on his lower back as was the fact that plaintiff had a full range of back motion and no tenderness, swelling or bruising. However, small bruises to his left and right forearms were noted.

6

Plaintiff was given Motrin, as needed.

Plaintiff has instituted suit herein <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. §1915.  A proceeding brought <u>in</u> <u>forma</u> <u>pauperis</u> may be dismissed as frivolous under §1915 (e)(2)(B)(I) if the claim alleged therein has no arguable basis in law and fact, <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted.  28 U.S.C. §1915 (e)(2)(B)(ii).  Giving the instant claim a liberal interpretation, it is the recommendation of the undersigned that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

The Fifth Circuit has set forth the factors to be looked to in determining whether an Eighth Amendment excessive force claim has been made out to "include" the following: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." <u>Hudson v. McMillian</u>, 962 F.2d 522, 523 (5th Cir. 1992).  Another issue with which the Court is concerned is whether any such force "... was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6, 112 S.Ct. 995, 999 (1992)(internal quotations omitted).  Nevertheless, as further noted by the Supreme

7

Court:

> "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." <u>Whitley</u>, 475 U.S., at 327, 106 S.Ct., at 1088 (quoting *Estelle*, supra, 429 U.S., at 106, 97 S.Ct., at 292)(internal quotation marks omitted.)

<u>Id</u>. at 9-10, 112 S.Ct. at 1000.

Applying the foregoing standard to the facts at hand, the Court finds that plaintiff's physical injuries as a result of the September 24, 2002 incident were <u>de</u> <u>minimis</u>. Hall's injuries did not include any broken bones, missing teeth, eye or ear injuries, loss of consciousness or other consequences normally associated with the application of excessive force. Rather, his medical records establish that he suffered from minor bruising on his forearms, a knot behind his ear and a small scratch on his back. His wounds were handled with peroxide and he was prescribed Motrin for pain, as needed. Based upon the extent of his injuries alone, the Court cannot conclude, as a matter of law, that excessive force was utilized against plaintiff. <u>Carlisle v. Augustino</u>, 129 Fed Appx. 105, 106 (5th Cir. 2005)(citing <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir. 2001)).

Secondly, there apparently was a need for the application of

8

some force by prison personnel, especially after plaintiff's handcuffs were removed. By his own testimony, plaintiff bolted from the control of the guards and onto the tier, after having told guards that he wanted to fight them. Nor did any of plaintiff's witnesses testify that he was behaving in a benign and orderly fashion before the altercation with guards broke out.

In considering the relationship between the need and the amount of force used, the Court sees no reasonable indication that the force utilized was excessive. As noted above, the Court does not believe, as a matter of law, that excessive force was utilized here. Plaintiff's provable injuries were hardly extensive and, by his own admission, resolved within one week.

On the other hand, prison security guards must maintain order in the institution. Plaintiff, through his actions of spitting on jail personnel and then engaging in combative behavior with the guards, constituted a reasonably perceived threat to which officials were forced to react. To prevail on an Eighth Amendment claim of excessive force, "... a plaintiff must establish that the force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm ...". Jones v. Cornutt, 100 Fed. Appx. 251, 253 (5th Cir. 2004)(citing Hudson, supra). Plaintiff cannot do so in this instance. Clearly, the force applied in light of plaintiff's resistance to the guards was not "'... repugnant to the conscience of mankind.'" Praylor v.

Fitzrandolph, 124 Fed. Appx. 251, 252 (5th Cir. 2005)(quoting
Baldwin v. Stalder, 137 F.3d 836, 838-39 (5th Cir. 1998)).

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the claims
of plaintiff, Roderick Hall, against defendants, Rick Warren,
Rodney Hillman, Billy Hill, Ralph Burch and Ronnie Spears, be
dismissed with prejudice at plaintiff's costs.

A party's failure to file written objections to the proposed
findings, conclusions, and recommendation contained in a magistrate
judge's report and recommendation within 10 days after being served
with a copy shall bar that party, except upon grounds of plain
error, from attacking on appeal the unobjected-to proposed factual
findings and legal conclusions accepted by the district court,
provided that the party has been served with notice that such
consequences will result from a failure to object. Douglass v.
United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana this **22** day of **July**, 2005.

UNITED STATES MAGISTRATE JUDGE